U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Administrative Appeals Office*
5900 Capital Gateway Drive, Mail Stop 2090
Camp Springs, MD 20588-0009



U.S. Citizenship and Immigration Services

YONGQIAN MO
C/O HOU MIN LUO, ESQUIRE
NGUYEN & CHEN, LLP
11200 WESTHEIMER RD STE 120
HOUSTON TX  77042

DATE:  MAR. 1, 2023                FILE #:  A216 023 529
                                   I-290B RECEIPT #:  WAC 19 903 17726

IN RE:         Self-Petitioner:  YONGQIAN MO

ON BEHALF OF PETITIONER:

HOU MIN LUO, ESQUIRE
NGUYEN & CHEN, LLP
11200 WESTHEIMER RD STE 120
HOUSTON TX  77042

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case.  If you believe we incorrectly decided your case, you may file a motion requesting us to reconsider our decision, reopen the proceeding, or both.  The requirements for motions are located at 8 C.F.R. § 103.5.  Motions must be filed on a Form I-290B, Notice of Appeal or Motion, **within 33 days of the date of this decision**.  This time period includes three days added for service by mail.

The Form I-290B website (www.uscis.gov/i-290b) contains the latest information on fee, filing location, and other requirements.  **Please do not mail any motions directly to the AAO**.

If you have any further questions about your case, please call the USCIS Contact Center at (800) 375-5283.

Sincerely,

Susan Dibbins
Chief, Administrative Appeals Office

REV 12/2022                                                              www.uscis.gov



Non-Precedent Decision of the
Administrative Appeals Office

In Re: 25672323

Date: MAR. 1, 2023

Motion on Administrative Appeals Office Decision

Form I-526, Immigrant Petition by Alien Entrepreneur

The Petitioner seeks classification as an immigrant investor pursuant to the Immigration and Nationality Act (the Act) section 203(b)(5), 8 U.S.C. § 1153(b)(5) (2015). This fifth preference (EB-5) classification makes immigrant visas available to noncitizens who invest the requisite amount of qualifying capital in a new commercial enterprise that will benefit the United States economy and create at least 10 full-time positions for qualifying employees.[1]

The Chief of the Immigrant Investor Program Office denied the petition. We subsequently dismissed the appeal, concluding that the Petitioner did not document the lawful source of the funds he claimed to have invested in Birch Boston Fund I, LP, the NCE.[2] *See* 8 C.F.R. § 204.6(e) (defining "capital"), (j) (2015). Subsequently, the Petitioner filed combined motions to reconsider and reopen the proceeding. The Chief improperly issued a decision on the motions. Specifically, the Chief lacked jurisdiction over the motions, as we have jurisdiction over the matter, including motions. *See* 8 C.F.R. § 103.5(a)(1)(ii) (stating "[t]he official having jurisdiction is the official who made the latest decision in the proceeding"). In light of the Chief's error, we reopened the matter on a Service motion under 8 C.F.R. § 103.5(a)(5), and provided the Petitioner an opportunity to file a brief in support of his combined motions. The Petitioner has submitted a brief to us, summarizing the procedural history of the matter, and maintaining that he has established the lawful source of his purported EB-5 funds.

The Petitioner bears the burden of proof to demonstrate eligibility by a preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369, 375-76 (AAO 2010). Upon review of materials that the Petitioner has offered in support of the combined motions, including those he initially filed and those he filed after our Service motion, we will dismiss his combined motions.

---

[1] On March 15, 2022, President Joseph Biden signed the EB-5 Reform and Integrity Act, which made significant amendments to the EB-5 program, including the designation of targeted employment areas and the minimum investment amounts. *See* Section 203(b)(5) of the Act, 8 U.S.C. § 1153(b)(5) (2022).

[2] The Petitioner has submitted documents indicating that the NCE is associated with a U.S. Citizenship and Immigration Services (USCIS) designated regional center, EB-5 Jobs for Massachusetts, Inc.

I. LAW

A motion to reconsider is based on an incorrect application of law or policy to the prior decision, and a motion to reopen is based on documentary evidence of new facts. The requirements of a motion to reconsider are located at 8 C.F.R. § 103.5(a)(3), and the requirements of a motion to reopen are located at 8 C.F.R. § 103.5(a)(2). We may grant a motion that satisfies these requirements and demonstrates eligibility for the requested immigration benefit.

In addition, as explained in our appellate decision, a noncitizen may be classified as an immigrant investor if he or she invests the requisite amount of qualifying capital in a new commercial enterprise. The investor must show that his or her investment will benefit the United States economy and create at least 10 full-time jobs for qualifying employees. 8 C.F.R. § 204.6(j)(4). Moreover, the regulation provides the following relevant definition:

> Capital means cash, equipment, inventory, other tangible property, cash equivalents, and indebtedness secured by assets owned by the alien entrepreneur, provided that the alien entrepreneur is personally and primarily liable and that the assets of the new commercial enterprise upon which the petition is based are not used to secure any of the indebtedness. All capital shall be valued at fair market value in United States dollars. Assets acquired, directly or indirectly, by unlawful means (such as criminal activities) shall not be considered capital for the purposes of . . . the Act.

8 C.F.R. § 204.6(e). As specified in the regulatory definition of "capital," a petitioner must establish that his or her invested capital did not derive, directly or indirectly, from unlawful means. *See id.*; *see also* 8 C.F.R. § 204.6(j). Bank letters or statements corroborating the deposit of funds by themselves are insufficient to demonstrate their lawful source. *Matter of Ho*, 22 I&N Dec. 206, 210-11 (Assoc. Comm'r 1998); *Matter of Izummi*, 22 I&N Dec. 169, 195 (Assoc. Comm'r 1998). The record must trace the complete path of the funds back to a lawful source.[3] *Matter of Ho*, 22 I&N Dec. at 210-11; *Matter of Izummi*, 22 I&N Dec. at 195.

II. ANALYSIS

In our appellate decision, we determined that the record did not establish the lawful source of the funds the Petitioner remitted to the NCE as his EB-5 investment. We based our determination on the following reasons. First, the Petitioner's bank statements showed that some of the funds he remitted to the NCE derived from deposits he received with the "Transaction Details": "GLB TRF GPA." He did not explain the nature of these funds or submit documents confirming these deposits originated from lawful sources. Second, documents associated with the 3,200,000 RMB business loan, the proceeds of which he remitted to the NCE as his EB-5 investment, did not demonstrate that he could lawfully use the proceeds for personal investment purposes. Third, in the alternative, we concluded that while the Petitioner claimed both his and his spouse's earnings financed the purchases of four properties that secured the 3,200,000 RMB business loan, the record included inconsistent evidence

---

[3] These requirements "serve a valid government interest; i.e., to confirm that the funds utilized in the [EB-5] program are not of suspect origin." *Spencer Enterprises, Inc. v. United States*, 229 F. Supp. 2d 1025, 1040 (E.D. Cal. 2001) (holding that a petitioner had not established the lawful source of her funds because, in part, she did not designate the nature of all of her employment or submit five years of tax returns), *aff'd*, 345 F.3d 683 (9th Cir. 2003).

regarding his spouse's employment and earning and lacked sufficient evidence showing that the couple retained enough of their income to purchase the properties.

A. Motion to Reconsider

On motion, the Petitioner "reassert[s]" that he "has shown that it is more likely than not that he obtained his investment funds from lawful sources." The Petitioner maintains that we "seem[ed] to ignore all the supporting evidentiary documents and insist[ed] that there are inconsistencies" concerning his spouse's employment and income. The record does not support his contention.

In our appellate decision, we discussed the evidence in the record, including the Petitioner's multiple statements concerning his spouse's employment history; documents claiming that his spouse worked for Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., between 1996 and 2013; and documents relating to his claim that a travel agency filed a nonimmigrant visa application for his spouse. We noted: "[w]hile the Petitioner has presented documents confirming [his spouse's] employment with Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., inconsistencies relating to her date of employment and amount of compensation remain unresolved." Although we did not specifically list all the documents in the appellate decision, we considered all of them, and determined that they included unresolved inconsistencies on the Petitioner's spouse's employment history and earnings. These inconsistencies are relevant to the issue of lawful source of the Petitioner's purported EB-5 capital. *See Matter of Ho*, 19 I&N Dec. 582, 591-92 (BIA 1988); *see also* 8 C.F.R. § 204.6(e) (defining "capital").

Based on these reasons, we will dismiss the Petitioner's motion to reconsider because the filing does not establish that our appellate decision was based on an incorrect application of law or policy, or that our appellate decision was incorrect based on the evidence then before us. *See* at 8 C.F.R. § 103.5(a)(3).

B. Motion to Reopen

On motion, the Petitioner submits additional evidence concerning the reasons under which we dismissed his appeal. First, the Petitioner claims on motion that the deposits he received with the "Transaction Details": "GLB TRF GPA" are his "personal currency exchange proceeds." He presents additional bank statements for his accounts ending in 5406 and 1888 listing the following transactions: (1) on December 16, 2014, he exchanged approximately 310,200 RMB for $50,000; (2) on December 31, 2014, he remitted $50,000 to "Global Transfer GPA" from his account ending in 5406; (3) on December 31, 2014, he received $50,000 from "GLB TRF GPA" in his account ending in 1888. It appears that "Global Transfer GPA" or "GLB TRF GPA" was an intermediary entity that facilitated his transfer of $50,000 from his account ending in 5406 to his account ending in 1888.

The Petitioner's bank statements for his accounts ending in 5406 and 1888 also list the following transactions: (1) on January 5, 2015, he received $2,000 from "GLB TRF GPA" in his account ending in 1888; (2) on January 13, 2015, he received in his account ending in 5406 $8,500 from an account he jointly owned with his spouse, and $36,500.37 with a transaction statement of "Direct Family Funds Transfer"; (3) on January 13, 2015, he remitted $45,000 to "Global Transfer GPA" from his account ending in 5406; and (4) on January 13, 2015, he received $45,000 from "GLB TRF GPA" in his

3

account ending in 1888. As discussed in our appellate decision, the Petitioner remitted funds in his account ending in 1888 to the NCE as his EB-5 investment, and to the NCE's general partner to cover fees and expenses.

Although the bank statements that the Petitioner submits on motion provide additional information concerning the path of the funds he sent to the NCE and its general partner, they do not explain the source of the $8,500 and the $36,500.37 that his account ending in 5406 received on January 13, 2015. The Petitioner ultimately remitted the funds from these two deposits to his account ending in 1888, and then to the NCE and its general partner.

On motion, the Petitioner asserts that he need not document the lawful source of all the funds in his account ending in 1888, because the "balance on January 9, 2015 is US $502,548.16, which has exceeded the required investment funds of US $500,000." He claims that the lawful source of the funds he received on January 5, 2015 ($2,000) and on January 13, 2015 ($45,000) is "of no relevance" because the funds "did not form part of [his] EB-5 investment funds." The record does not support this position. The evidence, including the Petitioner's bank statements for the account ending in 1888, shows that his account received funds on and before January 13, 2015, and it remitted his purported EB-5 investment as well as funds to cover fees and expenses to the NCE's general partner on January 16, 2015. As money is fungible, the Petitioner has not shown which deposits financed his purported EB-5 investment and which deposits financed his payments for fees and expenses. As such, he must document the lawful source of all the funds his account ending in 1888 received before January 16, 2015. Based on these reasons, the record, including evidence the Petitioner offers on motion, does not sufficiently document the complete path of his purported EB-5 investment, trace it back to a lawful source. *See Matter of Ho*, 22 I&N Dec. at 210-11; *Matter of Izummi*, 22 I&N Dec. at 195.

Second, the Petitioner asserts on motion that he could lawfully use proceeds from the business loan for his personal investment in the NCE. As discussed in our appellate decision, Article 7 of the "Comprehensive Credit Line Contract" states that the 3,200,000 RMB loan proceeds "shall be for the purpose of operation turnover," and that the Petitioner "shall not" use the funds "for adventure and equity investment in the aspect of securities and futures, nor other sectors strictly forbidden by state laws and regulations." Similarly, the loan voucher indicates that the "Loan Usage" is "Operating cycle."

On motion, the Petitioner submits a July 2019 statement purportedly from China Minsheng Bank, the financial institute that issued the business loan. The statement indicates that the Petitioner obtained the loan "in order to raise funds for investment immigration" and that "the provision regarding the usage of the loan did not violate any laws, regulations, or the bank's internal administrative policy." The statement was executed by an individual who did not state his or her position in the bank. The Petitioner has not submitted sufficient documentation explaining how the individual is familiar with the situation surrounding the business loan – including his intended use for the proceeds when he obtained the business loan – or demonstrating that the bank issued the business loan knowing that the Petitioner would use the proceeds in a manner contrary to the specified permissible uses. Based on these reasons, the Petitioner has not established the accuracy or veracity of the contents of the July 2019 bank statement.

The Petitioner also offers a letter from an attorney in China. The attorney, relying on the July 2019 statement from the China Minsheng Bank and citing Chinese law, claimed that the bank "fully aware that the loan issued to [the Petitioner] was for immigration purpose, and was still willing to execute the Loan Contract" and that "the restricted clause prohibiting loan purpose for equity investment were [sic] deemed to be changed under the consensual actions conducted by both parties." As noted, the record is insufficient to confirm the accuracy or veracity of the contents of the July 2019 bank statement. Additionally, Article 40 of the "Comprehensive Credit Line Contract" specifies that "[i]n case it is necessary to change or terminate [the contract] ahead of time, both parties shall coordinate to reach to consensus and written agreement." This provision indicates that a modification to the contract must be in writing. This provision does not support the attorney's statement that the Petitioner could lawfully use the proceeds of the business loan in a manner contrary to the stated permissible uses without a written modification to the contract.

Moreover, as noted in our appellate decision, there are additional documents in the record that do not support the Petitioner's contention that he could lawfully use the loan proceeds to make a personal investment in a business in the United States. For example, Chongqing Jindi Real Estate and Land Assets Appraisal Co., Ltd. (a business) is listed as a guarantor in the "Comprehensive Credit Line Contract" and a warrantor in the "Maximum-Amount Guarantee Contract." References to "operation turnover" and "operating cycle," as well as listing a business in the loan and security documents do not support the Petitioner's position that he could lawfully use the proceeds for his personal investment.

As explained in our appellate decision, the legality of the Petitioner's use of the loaned funds under the terms of the contract is a matter of foreign law. When relying on foreign law to establish eligibility, the application of foreign law is a question of fact which must be proved by the petitioner. *Matter of Kodwo*, 24 I&N Dec. 479, 482 (BIA 2008) (citing *Matter of Annang*, 14 I&N Dec. 502 (BIA 1973). Here, the evidence in the record, including documentation the Petitioner offers on motion, is insufficient to establish, by a preponderance of the evidence, that the loan documents permitted him to use the borrowed funds as his personal EB-5 capital.

Third, the Petitioner argues on motion that he has shown he and his spouse accumulated enough funds from their earnings to purchase the four properties[4] that secured the business loan, the proceeds of which he remitted to the NCE as EB-5 capital. He submits documents from the National Bureau of Statistics of China (NBS), listing information about household consumption expenditure in Chongqing, China, between 1996 and 2002. This information, however, does not account for the Petitioner's individual situation, such as the size of his household, his lifestyle, or his standard of living. As such, the information is insufficient to demonstrate that he and his spouse had lawfully accumulated adequate amounts from their earnings to purchase the four properties.

In addition, as discussed in our appellate brief, the record includes inconsistent evidence relating to the Petitioner's spouse's employment and income, which the Petitioner claims had partially financed the purchases of the properties that he used to secure the business loan. The Petitioner initially claimed

---

[4] On motion, the Petitioner indicates that he had previously submitted incorrect documents for one of the properties (a garage), which listed the wrong purchasing price. He offers on motion other documentations concerning the purchase of that property.

5

that his spouse worked for Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., and earned 1,960,000 RMB between 1996 and 2013. He then alleged that between 2008 and 2013, his spouse simultaneously held two jobs, one with Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., and the other with Chongqing Grand Metropark Hotel Co., Ltd. These claims, however, are inconsistent with information his spouse provided in a separate, nonimmigrant visa application filed in 2015. In her visa application, she stated that she had worked for Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., between 2000 and 2008, and then worked for Chongqing Grand Metropark Hotel between 2008 and 2013. The visa application does not indicate that she was employed by the two companies simultaneously. The last page of her visa application included the question, "Did anyone assist you in filling out this application," to which she answered, "No."

On motion, the Petitioner submits a July 2019 letter from "Chongqing Intercontinental Travel Service Co., Ltd.," claiming that the travel agency had erroneously filled out his spouse's 2015 nonimmigrant visa application and failed to correctly indicate that her employment with Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., was between 1996 and 2013. The letter also alleges that it was "industry practice" to not disclose the travel agency's involvement in the nonimmigrant visa application. Additionally, the Petitioner offers letters of individuals claiming to have worked with his spouse at Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., or Chongqing Grand Metropark Hotel Co., Ltd., as well as a July 2019 statement, alleging that he did not initially disclose his spouse's employment "as the Director of the Administrative Purchasing Department of Chongqing Grand Metropark Hotel Co., Ltd., . . . because the income from this work experience were not part of the source of [his] EB-5 investment funds."

The evidence, including documentation the Petitioner offers on motion, does not sufficiently explain or reconcile the inconsistent evidence concerning his spouse's employment and income. As noted, the Petitioner's spouse's 2015 nonimmigrant visa application specifically states that no one had assisted her in the filling out of the application. While the July 2019 letter from "Chongqing Intercontinental Travel Service Co., Ltd.," alleges that it was "industry practice" to not disclose assistance that she had received in filing her nonimmigrant visa application, the record lacks sufficient evidence to support this unsubstantiated claim. As such, the record fails to show that his spouse received assistance filling out her 2015 nonimmigrant visa application, or that the application does not correctly list her employment history.

Similarly, the letters from individuals who claimed to have worked with the Petitioner's spouse as well as the Petitioner's July 2019 statement do not sufficiently explain or reconcile the inconsistent evidence concerning his spouse's employment and income. Most of the individuals who claimed to have worked with the Petitioner's spouse have not offered evidence, such as documents from the employers, confirming their employment history. As such, the Petitioner has not sufficiently established the reliability of their claim that they worked with his spouse. While some individuals have included their business cards, noting their employment with Chongqing Grand Metropark Hotel Co., Ltd., the record does not sufficiently corroborate their claim that they were employed at the same time as the Petitioner's spouse.

Furthermore, as noted in our appellate decision, in his February 2015 statement, the Petitioner claimed that in 2012 his spouse worked for Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., but failed to indicate that she held a second job at the Chongqing Grand Metropark Hotel Co.,

6

Ltd. On motion, he attempts to explain his omission by alleging that his spouse's income from Chongqing Grand Metropark Hotel Co., Ltd., did not finance the purchase of the properties that secured the business loan. We find this argument unpersuasive, as the Petitioner has not offered documents showing that he and his spouse separated her purported income from her two jobs or that the couple only used her purported income from Chongqing Jindi Property Evaluation of the Real Estate Land Co, Ltd., but not income from Chongqing Grand Metropark Hotel Co., Ltd., to finance the purchase of the properties. Indeed, in the February 2015 statement, the Petitioner repeatedly asserted that "[t]he purchase funds [for the properties] came from our after-tax salary incomes accumulated for many years," without differentiating the sources of the incomes. In short, the record contains inconsistent evidence regarding the Petitioner's spouse's employment history and earnings, and the Petitioner has not resolved the inconsistencies by "independent objective evidence" or "competent objective evidence pointing to where the truth, in fact, lies . . . ." *See Matter of Ho*, 19 I&N Dec. at 591-92.

Based on the reasons stated above, the documents in the record, including those the Petitioner presents on motion, do not overcome our adverse finding that he has not documented the lawful source of his purported EB-5 capital. *See* 8 C.F.R. § 204.6(e), (j)(3); *Ho*, 22 I&N Dec. at 210-11; *Izummi*, 22 I&N Dec. at 195. Specifically, the evidence on motion, considered with documentation already in the record, does not demonstrate, by a preponderance of the evidence, the complete path of the funds he remitted to the NCE, or that he could lawfully use the proceeds from the 3,200,000 RMB business loan to invest in the NCE. In the alternative, the record has not established that he and his spouse had lawfully accumulated funds to purchase the four properties that he used to secure the business loan. We will therefore dismiss the motion to reopen. *See* at 8 C.F.R. § 103.5(a)(2).

### III. CONCLUSION

We will dismiss the Petitioner's motion to reconsider the matter because his motion filing does not establish that we erred in our appellate decision. *See* 8 C.F.R. § 103.5(a)(3). In addition, we will dismiss his motion to reopen the proceeding because he has not provided documentary evidence of new facts establishing his eligibility to be classified as an EB-5 investor. *See* 8 C.F.R. § 103.5(a)(2).

**ORDER:**  The motion to reconsider is dismissed.

**FURTHER ORDER:**  The motion to reopen is dismissed.